UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------- x
In re:                                              )
                                                    )      Chapter 11
**BIOFUEL INDUSTRIES GROUP, LLC,**                  )      Case No. 11-_____
                                                    )      Hon. _____
            Debtor.                                 )
------------------------------------------------------------- x

### AFFIDAVIT OF TERRY J. NOSAN IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY PLEADINGS AND REQUEST

I, Terry J. Nosan, hereby state that the following is true to the best of my knowledge, information and belief:

1. I am the Authorized Manager of Biofuel Industries Group, LLC (the "Debtor"). I am authorized by the Debtor to submit this Affidavit on behalf of the Debtor.

2. In my capacity as Authorized Manager of the Debtor, I am familiar with the operations, business affairs, banking relationships and books and records of the Debtor. In addition, I am familiar with the Debtor's negotiations with its proposed postpetition lenders, Enervation Advisors, LLC.

3. I have reviewed the Debtor's books and records and other information necessary to supervise the restructuring that the Debtor seeks to accomplish in Chapter 11.

4. I submit this Affidavit in support of the Debtor's voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

1

and the first day motions and applications (the "First Day Motions and Applications")[1] filed concurrently herewith. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, or my informed opinion based on my experience and knowledge of the Debtor's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

5. Part I of this Affidavit describes the business of the Debtor. Part II sets forth the relevant facts in support of the various First Day Motions and Applications filed by the Debtor concurrently herewith.

## I. BACKGROUND

6. On May 23, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Case"). The Debtor is continuing to operate its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

7. The Debtor is a limited liability company that was organized under the laws of the State of Michigan. Debtor's membership interests are owned (i) 50% by NextFuels, LLC, the sole voting member of the Debtor, and, (ii) 50% by approximately 55 different individuals and entities, which are non-voting members.

8. Prior to discontinuing its regular operations in July 2010, the Debtor, doing business as NextDiesel, produced and distributed biodiesel fuel and related

---

[1] Capitalized terms not expressly defined in this Affidavit shall have the meanings given to such terms in the applicable First Day Motions and Applications.

2

products primarily in Michigan. The Debtor was founded in 2005 and is based in Adrian, Michigan.

9. The Debtor owns a 30,000 square foot facility, located on a 25-acre land parcel, which includes an on-site state-of-the-art test lab, sophisticated environmental and fire suppression systems, and highly automated processing equipment that does not emit greenhouse gases and uses only minimal water during biodiesel production. The facility was equipped for an initial production capacity of 10 million gallons per year, with the ability to increase capacities to meet the growing demand for renewable fuels.

10. While not presently operating, the Debtor's facility is being maintained in a "hot idle" state to maintain the machinery and equipment and protect future production.

11. The Debtor is a party to commercial mortgage loans and term loans (together with all other related agreements and documents, collectively, the "Prepetition Credit Documents") with Citizens Bank ("Citizens").

## II. FIRST DAY MOTIONS AND APPLICATIONS

12. I have reviewed each of the First Day Motions and Applications (including the attached exhibits and schedules), and I believe that the relief sought in the First Day Motions and Applications is critical and necessary to the Debtor's efforts to be successful in the chapter 11 case and to maximize the value of the Debtor's assets

3

for the benefit of its creditors and its estate. The factual background and support for each of the Debtor's First Day Motions and Applications is provided below.

### A. *Postpetition Financing Motion*

13. The Debtor requires financing and credit under Section 364 of the Bankruptcy Code to maintain its assets. Maintenance of Debtor's assets is necessary to preserve Debtor's assets for future production and is integral to the successful sale or other disposition of the Debtor's assets to maximize the value of the Debtor's estate. The Debtor believes that the inability to fund these activities in a timely manner will result in a substantial diminution in the value of its assets.

14. After diligently pursuing avenues to obtain (i) unsecured credit allowable under §§ 503(b)(1) and 507(b) of the Bankruptcy Code as an ordinary administrative expense, (ii) unsecured credit allowable under §364(c)(2) of the Bankruptcy Code, and (iii) credit secured by junior liens on Debtor's prepetition assets in accordance with §364(c)(3) of the Bankruptcy Code, the Debtor has requested that LQM Ventures LLC ("LQM") provide postpetition financing pursuant to and under the terms set forth in Debtor's motion for entry of Order authorizing postpetition financing (the "Financing Motion").

15. The Financing Motion requests the authority to enter into a postpetition credit facility (the "Credit Facility") with LQM in the amount of $60,000.

### B. *Sale Procedures and Approval Motion*

16. Prior to the Petition Date, since approximately early 2009, the Debtor has been exploring strategic alternatives to restructure the Debtor's business operations, including a potential sale of substantially all of the Debtor's assets.

17. The Debtor considered a number of potential sales and restructuring alternatives in order to develop a plan that would maximize value for its creditors and/or to ensure the long-term continuity of its business. In this regard, the Debtor's members and representatives engaged in discussions with more than 30 prospective parties, including, strategic partners, investors, and buyers, to determine their interest in pursuing a transaction with the Debtor.

18. Due to liquidity concerns and in an effort to maximize the value of the Debtor's estate, the Debtor has determined, after the exercise of due diligence and in the exercise of the Debtor's sound business judgment, to enter into an Asset Purchase Agreement dated May 20, 2011 (the "Stalking Horse Agreement") with LQM, for itself or on behalf of an affiliate to be formed (the "Purchaser") pursuant to which Purchaser has agreed to act as a stalking horse bidder for the sale of the Purchased Assets free and clear of all liens, claims and encumbrances.

19. The Debtor has determined that the floor established by the Stalking Horse Agreement, subject to higher and better bids pursuant to a Court-approved, open auction process pursuant to section 363 of the Bankruptcy Code (the "Proposed Sale"), affords it the best opportunity to maximize value for its creditors.

20. **Consistent with the time-line provided in the Stalking Horse Agreement, the Debtor requires immediate consideration and approval of the proposed auction sale <u>procedures</u> to be utilized in connection with the sale of substantially all of the Debtor's assets. Without immediate consideration of the proposed auction and bidding procedures, the Debtor could be in default of the Stalking Horse Agreement and the Debtor's sale efforts could be jeopardized.**

21. Accordingly, the Debtor believes that immediate consideration of its proposed bidding and auction procedures is in the best interests of its estate, its creditors and other parties in interest.

D. *Motion to Institute Special Service List*

22. The Debtor expects numerous parties to file notices of appearance and requests for service of the various filings in the case.

23. The Debtor submits that an order streamlining the notice and service requirements applicable to the bankruptcy case under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules will enable the Debtor to avoid the waste of time, effort and money in copying documents for, and serving documents upon, parties who in many instances have no genuine interest in receiving such documents.

24. The Debtor believes that the adoption of a limited notice and service procedure is necessary and appropriate in this case. The Debtor has identified over 250 potential creditors and other interested parties. Additionally, the Debtor expects that other parties in interest will also file notices of appearance.

25. It is my understanding that unless the Debtor requests authority to authorize them to restrict service, then all motions must be served on all creditors. The costs and burdens associated with copying and mailing, express delivery or otherwise serving paper copies of all filings will impose expensive, economic and administrative burdens on the Debtor's estates, this Court, and all other parities in interest.

26. Accordingly, the Debtor requests entry of an order authorizing the implementation of a special service list. I believe that allowing the use of special service list will substantially reduce administrative burdens and result in substantial cost savings to the Debtor's estate because of the reduction of time and money the Debtor will have to expend. Similarly, I believe that a special service list also will significantly reduce the administrative and economic burden placed on all other parties in interest.

E. *Utilities Motion*

27. In in order maintain its facility and assets, the Debtor incurs utility expenses for electricity and natural gas with various utilities companies.

28. Utility services are essential to maintaining the Debtor's assets and, therefore, to the success of the Debtors' bankruptcy case. If the utility companies are permitted to terminate service, the value Debtor's assets will be jeopardized.

29. For the forgoing reasons, I believe it is in the best interest of the Debtor, its estates and creditors that an order be entered (1) prohibiting the utility companies from discontinuing, altering or refusing service, and (2) establishing a procedure for

determining adequate assurances of payment, including the providing of a 30-day deposit, unless such utility provider is already holding a deposit.

## III. CONCLUSION

30. The Debtor believes that the commencement of the Chapter 11 case is in the best interests of its creditors, estates, and other parties in interest, providing among other things, the ability to maximize returns to creditors and other stakeholders of the company. As it did during the pre-petition period, the Debtor, with the assistance of its professionals, will continue to maintain its value while actively pursuing a sale of assets in order to maximize value for the benefit of all creditors. I believe that the relief sought in the First Day Motions and Applications is critical and necessary to the Debtor's efforts to be successful in the chapter 11 case and to maximize the value of the Debtor's assets for the benefit of its creditors and its estate.

_____
Terry J. Nosan
Authorized Manager

Signed and sworn to before me
this ___17th___ day of May, 2011.

_____
Amy Katzman
Notary Public
My commission expires: 6/01/2013

AMY KATZMAN
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires June 1, 2013
Acting in the County of Oakland

8