UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------- x
In re:                                                         )
                                                               )    Chapter 11
**BIOFUEL INDUSTRIES GROUP, LLC,**                             )    Case No. 11-_____
                                                               )    Hon. _____
                     Debtor.                                   )
------------------------------------------------------------- x

## COVER SHEET FOR MOTION TO USE CASH
## COLLATERAL OR TO OBTAIN CREDIT

     The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ____ Yes<br><br>_x_ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | ____ Yes<br><br>_x_ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _X_ Yes<br><br>___ No | Page _4_, ¶ _5_ |

| | | |
|---|---|---|
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__X__ No | Page _____, ¶ _____ |

| | | |
|---|---|---|
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | __X__ Yes<br><br>____ No | Page _5_, ¶ _13_ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | __X__ Yes<br><br>____ No | Page _5_, ¶ _16_ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | ____ Yes<br><br>__X__ No | Page ____, ¶ ____ |

**CARSON FISCHER, P.L.C.**

_/s/ Christopher A. Grosman_

Robert A. Weisberg (P26698)
Christopher A. Grosman (P58693)
4111 Andover Road
West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
E-mail:  RWeisberg@CarsonFicher.com
          CGrosman@CarsonFischer.com

_Proposed Counsel for the Debtor and Debtor In Possession_

Dated: May 23, 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-------------------------------------------------------------x
In re:                                     )
                                           )     Chapter 11
BIOFUEL INDUSTRIES GROUP, LLC,             )     Case No. 11-_____
                                           )     Hon. _____
            Debtor.                        )
-------------------------------------------------------------x
```

## FIRST DAY MOTION FOR ENTRY OF A FINAL ORDER (A) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN SECURED POSTPETITION FINANCING AND (B) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor"), through its undersigned counsel, for its *First Day Motion for Entry of Interim Order Authorizing Postpetition Financing* (the "Motion"), hereby states:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.      On May 23, 2011 (the "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Case"). The Debtor is continuing to operate its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

3.      No official committee of unsecured creditors has been appointed in the

Bankruptcy Case (the "Committee"). No trustee has been appointed in the Bankruptcy Case.

4.      The Debtor is a limited liability company that was organized under the laws of the State of Michigan. Debtor's membership interests are owned (i) 50% by NextFuels, LLC, the sole voting member of the Debtor, and, (ii) 50% by approximately 55 different individuals and entities, which are non-voting members.

5.      Prior to discontinuing its regular operations in July 2010, the Debtor, doing business as NextDiesel, produced and distributed biodiesel fuel and related products primarily in Michigan. The Debtor was founded in 2005 and is based in Adrian, Michigan.

6.      The Debtor owns a 30,000 square foot facility, located on a 25-acre land parcel, which includes an on-site state-of-the-art test lab, sophisticated environmental and fire suppression systems, and highly automated processing equipment that does not emit greenhouse gases and uses only minimal water during biodiesel production. The facility was equipped for an initial production capacity of 10 million gallons per year, with the ability to increase capacities to meet the growing demand for renewable fuels.

7.      While not presently operating, the Debtor's facility is being maintained in a "hot idle" state to maintain the machinery and equipment and protect future production.

8.      The Debtor is a party to commercial mortgage loans and term loans

(together with all other related agreements and documents, collectively, the "Prepetition Credit Documents") with Citizens Bank ("Citizens").

9.     The obligations under the Prepetition Credit Documents are secured by a first priority lien and security interest in substantially all of Debtor's assets. As of approximately the Commencement Date, the total outstanding principal amount owed to Citizens under the Prepetition Credit Documents was approximately $9,821,000 (the "Prepetition Indebtedness").

## Relief Requested

10.     The Debtor's prepetition lender, Citizens, is not willing to provide postpetition lending sufficient for Debtor's needs.

11.     LQM Ventures LLC, a Delaware limited liability company, or an entity to be formed by it ("LQM") is willing to provide post-petition financing as contemplated in the Asset Purchase Agreement dated May 20, 2011 (the "APA"), as summarized herein, and as provided in the Proposed Order (as defined below).

12.     By this Motion, Debtor seeks entry of an order (i) authorizing Debtor to obtain secured postpetition and superpriority credit pursuant to 11 U.S.C. § 364 as provided herein and in the Proposed Order; and (ii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(c).

## POSTPETITION LOANS

### A. Urgent Need for Financing

13.     The Debtor does not have sufficient available sources of working capital

and financing to continue to maintain its facility and equipment in "hot-idle" mode without the financing contemplated by the Proposed Order. In the absence of the financing contemplated by the Proposed Order, the value of the Debtor's assets could be seriously and irreparably harmed. The preservation, maintenance, and enhancement of the Debtor's assets is of the utmost significance and importance.

14. The Debtor has negotiated the terms of the proposed order granting the relief requested herein (the "Proposed Order") with LQM at arm's length and in good faith, as "good faith" is defined for purposes of Section 364(e) of the Code, with all parties represented by experienced counsel.

15. LQM has offered the Debtor postpetition financing (the "Postpetition Loans") that will provide the Debtor with the ability to address its financing needs. The Postpetition Loans will enable the Debtor to continue to maintain its facility and its machinery and equipment, thereby preserving the value of the Debtor's assets pending the sale thereof.

16. The Debtor believes that the terms and conditions of the Postpetition Loans are fair, reasonable and in the best interests of the bankruptcy estate.

**B. Summary of the Terms of the Proposed Postpetition Loans**

17. As more fully set forth in the Proposed Order, LQM has agreed to provide the Debtor with debtor-in-possession financing.

18. Subject to the entry of (i) the Proposed Order and a Final Order (ii) an order approving the bidding procedures for the sale of substantially all of the Debtor's

assets, including the approval of the Break-up Fee set forth in paragraph 16 of the Asset Purchase Agreement dated May 20, 2011, LQM is willing to provide the Postpetition Loans, pursuant to a budget attached hereto as **Exhibit 2** (the "Budget").

19.     The anticipated terms and conditions of the proposed Postpetition Loans, which are set forth in detail in the Proposed Order (which is incorporated herein by this reference), are as follows:

a.     The Debtor shall grant to LQM valid, binding, enforceable and perfected Liens, subordinate to existing liens, which were properly perfected as of the Commencement Date and not subject to avoidance, in and to all collateral security (the "**Collateral**") to be provided pursuant to the APA to secure all Obligations incurred under the APA, including, without limitation,

All inventory, accounts, equipment, general intangibles, chattel paper, and goods (respectively as defined in the Uniform Commercial Code) now owned or in which the Debtor has any interest or hereafter acquired or in which the Debtor obtains an interest; all real estate owned by the Debtor or in which the Debtor has an interest, and the products and proceeds thereof (in each case without regard to whether acquired prior or subsequent to the Commencement Date).

b.     The Liens to be created and granted to LQM shall be created pursuant to Bankruptcy Code Section 364(c)(3). With the exception of (a) the statutory fees of the United States Trustee as provided in 28 U.S.C. §1930(a) and fees to the clerk of the Bankruptcy Court (the "**Mandatory Fees**"), and (b) property of the estate which, on the Commencement Date was subject to an existing and properly perfected security interest in the Collateral, the Liens to be created and granted to LQM, shall be first, prior, perfected, and superior to any security, mortgage, or collateral interest or Lien or claim to the Collateral.

c.     The Obligations under the APA shall be an allowed administrative expense claim (the "**Super-Priority Claim**") with priority (subject and subordinate to the Mandatory Fees) under Bankruptcy Code Section 364(c)(1) and

otherwise over all the administrative expense claims and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 330 and 331 (except as otherwise provided below with respect to the Mandatory Fees), 503(a), 503(b), 506(c), 507(a), 507(b) and 546, *provided that* the Super-Priority Claim of LQM shall not extend to any avoidance actions and the proceeds thereof under Chapter 5 of the Bankruptcy Code (other than actions brought pursuant to Section 549 of the Bankruptcy Code as to which LQM shall have first priority) except for reimbursement of amounts, if any, advanced by LQM for the prosecution of such avoidance actions and collection of any recoveries therefrom and for realization on any assets of the Debtor which were subject to liens which are so avoided. Notwithstanding the above, nothing contained herein is deemed to constitute the obligation of the LQM to make any such advances.

d. Except for the Mandatory Fees, no costs or expenses of administration (including professional fees allowed and payable under Bankruptcy Code Sections 330 and 331 that have been or may be incurred in this Chapter 11 case, and no priority clams to the Collateral are, or will be, prior to or on a parity with the Obligations under the APA, or with any other claims of LQM arising under the Proposed Order.

e. No cost or expense which is incurred by the Debtor or any other person in connection with or on account of the preservation and/or disposition of any Collateral or which otherwise could be chargeable to LQM or the Collateral by the Debtor or such other person pursuant to Bankruptcy Code Section 506(c) or otherwise, shall be chargeable to LQM or the Collateral.

f. If at any time prior to the repayment in full of all Obligations under the APA and the termination of LQM's obligation to make loans and Advances under the APA, the Debtor or any trustee subsequently appointed shall obtain credit or incur debt pursuant to Bankruptcy Code Section 364(b), 364(c) or 364(d), then all of the consideration for such credit or debt, including the Advances and interest thereon, shall immediately be turned over to LQM in reduction of the Obligations under the APA (except to the extent required to pay Mandatory Fees, or other items provided for in, and consistent with, any existing budget agreed to between Debtor and LQM.).

g. All obligations of the Debtor to LQM under the APA are due and payable upon the earliest to occur of

(1)       the closing of the Sale; or

(2)       the effective date of any plan of reorganization for any of the Debtors in this Chapter 11 case; or

(3)       an Event of Default under the APA.

h.      Unless and until the Obligations under the APA are repaid in full, the protections afforded to LQM under the APA and the Proposed Order, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting this case into a case pursuant to Chapter 7 of the Bankruptcy Code, and the Liens in and to the Collateral and the Super-Priority Claim shall continue in these proceedings and in any such successor case, and such security, mortgage, and collateral interests and other Liens, and Super-Priority Claim shall maintain their priority as provided by the Proposed Order until the Obligations under the APA have been satisfied in full.

i.      The amount, time, and manner of payment of the Obligations pursuant to the APA, the creation, scope, perfection, and priority of the security, mortgage, and collateral interests and other Liens in and to the Collateral and the Super-Priority Claim shall not be altered or impaired by any plan of reorganization which may hereafter be confirmed or by any further order which may hereafter be entered.

## APPROVAL UNDER SECTION 364

20.    Section 364 of the Bankruptcy Code allows a debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business and (c) obtain credit with specialized priority or with security. If a debtor in possession cannot obtain postpetition credit on an unsecured basis, the court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super priority administrative expense status or is secured by a lien on the debtor's property, or a combination of the foregoing.

21.    The Debtor proposes to obtain the Postpetition Loans by providing

security interests in and liens on its assets pursuant to Section 364(c) of the Bankruptcy Code. Section 364(c) of the Bankruptcy Code provides that:

> (c)  If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
>
> (1)  with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is subject to the lien.

11 U.S.C. § 364(c).

## A. The Debtor is Unable to Obtain Credit Otherwise

22.  The Debtor will show, at the hearing on the Motion or otherwise, that, since substantially all of its assets are already encumbered, and given its current liquidity concerns and the fact that it is not operating, it is not possible for Debtor to obtain credit on either an unsecured basis, or on the basis of granting junior liens, on more favorable terms than provided by LQM. Indeed, the terms proposed by LQM represents the only financial package currently available. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Bray v. Shenandoah Federal Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986).

23.  A debtor need only demonstrate "by a good faith effort that credit was not

available" without the protections of Section 364. Id. at 1088; and In re Plabell Rubber Prods. Inc., 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley. Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence at the hearing on this Motion will satisfy the requirement of Section 364(d) that credit on other terms was unavailable to the Debtors.

### B. Application of the Business Judgment Standard

24.     Because of liquidity concerns, the lack of success in pursuing the other potential providers of financing and the impracticability of pursuing (and paying for) numerous other prospective lenders, the Debtor has concluded that, in its business judgment, only LQM is able to offer a postpetition credit facility to meet the Debtor's finding needs on the terms, and within the time frame, that Debtor requires.

25.     After appropriate investigation and analysis, management has concluded that the Postpetition Loans are the only realistic alternative available in the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17

(Bankr. S.D. Ohio 1983). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank. N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

26. In general, a bankruptcy court should defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. In re Curlew Valley Assoc., 14 B.R. 506, 511 13 (Bankr. D. Utah 1981). Courts generally will not second guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." Curlew Valley, 14 B.R. at 513 14 (footnotes omitted).

27. The Debtor has exercised sound business judgment in determining that the Postpetition Loans are appropriate and have satisfied the legal prerequisites to borrow thereunder. The terms of the Postpetition Loans are fair and reasonable and are in the best interests of the Debtor's bankruptcy estate. Accordingly, the Debtor should be granted authority to enter into the Postpetition Loans and borrow funds from LQM on the secured, superpriority basis described above, and take the other actions as requested herein.

C. **The Postpetition Loans are Necessary to Preserve Assets of the Debtor's Estate**

28. Access to credit is necessary to satisfy the costs associated with

maintaining the Debtor's assets pending sale thereof. In the absence of immediate access to cash and credit, the value of the Debtor's assets may be jeopardized

### D. Request for Immediate Interim Relief

29.     Pending the Final Hearing, the Debtor requires immediate financing for, among other things, payroll and purchase of maintenance supplies associated with the "hot-idle".

30.     Absent immediate financing, the Debtor will be unable to maintain its assets and, therefore, such assets could be jeopardized pending the Final Hearing. Consequently, if interim relief is not obtained, the value of Debtor's assets could be immediately and irreparably jeopardized, to the detriment of its estate, creditors and other parties in interest.

31.     Accordingly, the Debtor requests that, pending the Final Hearing, the Court schedule the Interim Hearing on an expedited basis to consider the Debtor's request for authorization to obtain emergency interim credit under the Postpetition Loans, which shall not exceed approximately $60,000, in accordance with and pursuant to the terms and conditions contained in the Proposed Order.

32.     Federal Rule of Bankruptcy Procedure 4001 (c) permits a court to approve a debtor's request for financing following the filing of a motion requesting authorization to obtain postpetition financing, "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business

judgment standard applicable to other business decisions. Simasko, 47 B.R. at 449; Ames Dep't Stores, 115 B.R. at 38. A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. Simasko, 47 B.R. at 449; Ames Dep't. Stores, 115 B.R. at 36.

### E. The Terms of the Postpetition Loans are Fair, Reasonable and Appropriate

33.    The Debtor is unable to obtain unsecured credit allowable solely as an administrative expense or credit secured by junior liens. The proposed Postpetition Loans reflects the exercise of sound and prudent business judgment. The Debtor believes that it would not have been able to obtain financing on any other basis. In management's considered business judgment, the Postpetition Loans are the best financing option available in the circumstances in this case.

34.    The proposed Postpetition Loans provides that the security interests and administrative expense claims granted to LQM are subject, among other things, to the fees of the U.S. Trustee and the Clerk of the Court allowed by 28 U.S.C. § 1930.

### Notice

35.    Notice of this Motion has been given to: (i) the Office of the United States Trustee, (ii) counsel for Debtor's prepetition and proposed postpetition secured lenders, (iii) those parties included on the proposed Ex Parte Motion for Order Establishing Special Service List Pursuant to L.B.R. 2002-1, (iv) the 20 largest unsecured creditors of each Debtor; and (v) those parties required pursuant to L.B.R. 9013-1 (E.D.M.). In light of the relief requested herein, the Debtor submits that no further notice is necessary or

required.

**No Prior Request**

36.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form of attached **Exhibit 1**: (a) authorizing the postpetition financing; (b) scheduling a final hearing, if needed; and (c) granting such other and further relief as is just and proper.

**CARSON FISCHER, P.L.C.**

_/s/ Christopher A. Grosman_
Robert A. Weisberg (P26698)
Christopher A. Grosman (P58693)
4111 Andover Road
West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile: (248) 644-1832
E-mail: RWeisberg@CarsonFicher.com
            CGrosman@CarsonFischer.com

Dated: May 23, 2011                    _Proposed Counsel for the Debtor and Debtor In Possession_

# Exhibit 1

## Proposed Order

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In Re:                  :     Chapter 11

                    :     Case No. 11 -- _____

BIOFUEL INDUSTRIES GROUP, LLC, :

                    :     Hon._____

         Debtor.    :

                    :

                    :

## FINAL ORDER (A) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN FINAL SECURED POST-PETITION FINANCING AND (B) GRANTING RELATED RELIEF

THIS MATTER having come before the Court upon the Motion dated May __, 2011 (the "**Motion**") of Biofuel Industries Group, LLC, debtor and debtor in possession (the "**Debtor**") seeking entry of an order:

(a)     authorizing the Debtor to obtain credit and incur debt secured by liens (as defined in Section 101(37) of Title 11, U.S.C., as amended (the "**Bankruptcy Code**") and referred to herein as "**Liens**") on property of the Debtor's estate pursuant to Section 364(c)(3) of the Bankruptcy Code and with priority, as to administrative expenses, as provided in Section 364(c)(1) of the Bankruptcy Code; and

(b)     authorizing the Debtor to establish that financing arrangement with LQM Ventures LLC, a Delaware limited liability company, or an entity to be formed by it (the "**Lender**") and the Lender, which is contemplated by the Asset Purchase Agreement dated May __, 2011 (the "**APA**") substantially in the form annexed to the Motion as **Exhibit** ___, and incur the obligations as provided at section 18 of the APA (the "**Obligations**").

(c)     authorizing the Debtor to provide the Lender with Liens upon the Debtor's property as provided in and as contemplated by the APA, as supplemented by this Order.

(d)     Authorizing the Debtor to grant the Lender a Super-Priority Claim (as hereinafter defined) over any and all administrative expenses other than as set forth in paragraph 11 below.

It appearing that absent the relief requested herein, the Debtor will suffer immediate and irreparable harm; and it further appearing that notice of the Motion is sufficient and complies with the requirements of Bankruptcy Rules 4001(c) and 4001(d); and for good cause shown;

<u>IT HEREBY FOUND THAT:</u>

A.     On May ___, 2011 (the "**Commencement Date**"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§101 et seq.

B.     The Debtor has continued in the management and operation of its businesses and properties as debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been appointed in these cases.

C.     This Court has jurisdiction, pursuant to 28 U.S.C. §§157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

D.     An immediate need exists for the Debtor to obtain funds to preserve the value of its estate and the going concern value of the Project. The Debtor requires the additional availability of working capital, the absence of which would immediately and irreparably harm the Debtor, its estates, and their creditors and the possibility for a successful reorganization.

E.     The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.

F.     The Debtor is also unable to obtain secured credit, allowable only under Bankruptcy Code Section 364(c)(3), except under the terms and conditions provided in this Order. The Debtor is unable to obtain credit for borrowed money without the Debtor's granting to the Lender (i) Liens on various of the assets of the Debtor pursuant to Bankruptcy Code Section 364(c)(3), and (ii) a super-priority administrative expense claim status pursuant to Sections 364(c)(1) of the Bankruptcy Code and as provided by this Order.

G.     The availability of sufficient working capital through the incurrence of indebtedness for borrowed money and other financial accommodations is vital to the Debtor's ability to preserve and maintain the value of its property, to consummate a sale of its assets, and its ability to consummate a successful reorganization.

H.     The relief requested in the Motion is necessary, essential, and appropriate for the preservation of Debtor's property.

I.     It is in the best interest of Debtor's estate to be allowed to establish the financing arrangement contemplated by the APA.

J.     The terms and conditions of the APA relative to the Advances, including those which provide for the payment of interest to the Lender at the times, and in the manner provided under the APA, are believed to be fair, reasonable, and the best available under the circumstances.

K.     The APA was negotiated in good faith and at arm's length between the Debtor, on the one hand, and the Lender on the other. Credit to be extended under the APA will be so extended in good faith, in consequence of which the Lender is entitled to the protection and benefits of Bankruptcy Code Section 364(e).

L.     The notice of the Hearing at which this Order was entered, which notice was provided by the Debtor to (i) the United States Trustee, (ii) the Lender, (iii) the pre-petition lender, (iv) each other party which has filed a request for special notice with this Court and served such request upon the Debtor's counsel, (v) counsel for any statutory committees, if any, (vi) all creditors who have recorded a UCC-1 financing statement on the personal property of the

2

Debtor at least fifteen business days prior to the Commencement Date, and (vii) the Debtor's twenty largest unsecured creditors, constitutes adequate notice under the circumstances in accordance with Bankruptcy Rule 4001(c) and Bankruptcy Code Section 102(1), as required by Bankruptcy Code Section 364(c) in light of the nature of the relief requested in the Motion.

M.     Good and sufficient cause has been shown for the entry of this Order. Among other things, the entry of this Order will (i) enable the Debtor to continue its business at a going concern, (ii) increase the possibility for a successful sale, and (iii) be in the best interest of the Debtor, its creditors and its estate.

NOW, THEREFORE, on the Motion of the Debtor and the record before the Court with respect to the Motion made by the Debtor, and with the consent of the Debtor and the Lender to the form and entry of this Order, and good cause appearing,

IT IS ON THIS __ day of May, 2011 ORDERED that:

### APPROVAL OF AND AUTHORIZATION AS TO BORROWING

1.     Unless otherwise defined in this Order, all capitalized terms used herein shall have the same meaning as in the Motion or APA, as applicable.

2.     The terms and the conditions of the APA, as they relate to the DIP Loan, are hereby approved. The Debtor is authorized to:

> (1)     Establish the financing arrangement on the terms set forth in the APA.

> (2)     Execute the APA and any other instruments and documents as may be necessary, if any.

> (3)     Borrow up to $60,000 under the APA.

3.     The Debtor is herby authorized and required to do and perform all acts and to make, execute, and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the APA relative to the DIP Loan and the creation and perfection of the Liens described in and provided for by the APA and to assure the priority thereof as contemplated herein.

4.     The Debtor is hereby authorized to grant to the Lender valid, binding, enforceable and perfected Liens, subordinate to existing liens, mortgages and security interests, which were properly perfected as of the Commencement Date and not subject to avoidance (the "Senior Secured Creditors"), in and to all collateral security (the "**Collateral**") to be provided pursuant to the APA to secure all Obligations incurred under the APA, including, without limitation,

> All inventory, accounts, equipment, general intangibles, chattel paper, and goods (respectively as defined in the Uniform Commercial Code) now owned or in which the Debtor has any interest or hereafter acquired or in which the Debtor obtains an interest; all real estate owned by the Debtor or in which the Debtor has an interest, and the products and

3

proceeds thereof (in each case without regard to whether acquired prior or subsequent to the Commencement Date).

5.  The automatic stay imposed under Bankruptcy Code Section 362(a)(4) is hereby lifted to permit the Debtor to grant the aforesaid Liens and to perform the Debtor's liabilities and Obligations to the Lender in connection with the DIP Loan under the APA.

6.  Each officer of the Debtor as may be so authorized by the managing member of the Debtor, acting singly, is hereby authorized to execute and deliver the APA, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtor.

7.  The Liens to be created and granted to the Lender, as provided in paragraph 4 above, are created pursuant to Bankruptcy Code Sections 364(c)(3). With the exception of (a) the statutory fees of the United States Trustee as provided in 28 U.S.C. §1930(a) and fees to the clerk of the Bankruptcy Court (the "**Mandatory Fees**"), and (b) property of the estate which, on the Commencement Date was subject to an existing and properly perfected lien, mortgage or security interest in the Collateral, the Liens to be created and granted to the Lender, as provided in paragraph 4 above, are first, prior, perfected, and superior to any security, mortgage, or collateral interest or Lien or claim to the Collateral.

8.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Lender's Liens upon the Collateral to secure all Obligations incurred under the APA, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Liens of the Lender in and to the Collateral or to entitle the Lender to the priorities granted herein, *provided, however*, the Debtor may execute and the Lender may file or record financing statements or other instruments to evidence and to perfect the Liens authorized hereby, *provided further, however*, no such filing or recordation shall be necessary or required in order to create or perfect any such Lien.

9.  The Lender, in its discretion, may file a xerographic copy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property.

10.  The APA shall constitute and evidence the valid and binding Obligations of the Debtor, which Obligations shall be enforceable against the Debtor in accordance with its terms.

## ADMINISTRATIVE CLAIM

11.  The Obligations under the APA shall be an allowed administrative expense claim (the "**Super-Priority Claim**") with priority (subject and subordinate to the Mandatory Fees) under Bankruptcy Code Section 364(c)(1) and otherwise over all the administrative expense claims and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 330 and 331 (except as otherwise provided in paragraph 12 below with respect to the Mandatory Fees), 503(a), 503(b), 506(c),

4

507(a), 507(b) and 546, *provided that* the Super-Priority Claim of the Lender shall not extend to any avoidance actions and the proceeds thereof under Chapter 5 of the Bankruptcy Code (other than actions brought pursuant to Section 549 of the Bankruptcy Code as to which the Lender shall have first priority) except for reimbursement of amounts, if any, advanced by the Lender for the prosecution of such avoidance actions and collection of any recoveries therefrom and for realization on any assets of the Debtor which were subject to liens which are so avoided. Nothing contained herein is deemed to constitute the obligation of the Lender to make any such advances.

12.    Except for the Mandatory Fees, no costs or expenses of administration including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 330 and 331 that have been or may be incurred in these Chapter 11 cases, and no priority clams to the Collateral are, or will be, prior to or on a parity with the Obligations under the APA, or with any other claims of the Lender arising hereunder.

13.    No cost or expense which is incurred by the Debtor or any other person in connection with or on account of the preservation and/or disposition of any Collateral or which otherwise could be chargeable to the Lender or the Collateral by the Debtor or such other person pursuant to Bankruptcy Code Section 506(c) or otherwise, shall be chargeable to the Lender or the Collateral, with the exception of advances by Citizens Bank to preserve or maintain the Collateral upon two (2) business days notice to Lender, unless said expenditure is an emergency.

14.    If at any time prior to the repayment in full of all Obligations under the APA and the termination of the Lender's obligation to make loans and Advances under the APA, the Debtor or any trustee subsequently appointed shall obtain credit or incur debt pursuant to Bankruptcy Code Section 364(b), 364(c) or 364(d), then all of the consideration for such credit or debt, including the Advances and interest thereon, shall immediately be turned over to the Lender in reduction of the Obligations under the APA.

15.    All Obligations of the Debtor to the Lender under the APA are due and payable upon the earliest to occur of

(1)    the closing of the Sale; or

(2)    the effective date of any plan of reorganization for any of the Debtors in these Chapter 11 cases; or

(3)    an Event of Default under the APA.

16.    Unless and until the Obligations under the APA are repaid in full, the protections afforded to the Lender under the APA and hereunder, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting this case into a case pursuant to Chapter 7 of the Bankruptcy Code, and the Liens in and to the Collateral and the Super-Priority Claim shall continue in these proceedings and in any such successor case, and such security, mortgage, and collateral interests and other Liens, and Super-Priority Claim shall maintain their priority as provided by this Order until the Obligations under the APA have been satisfied in full.

17.     The amount, time, and manner of payment of the Obligations pursuant to the APA, the creation, scope, perfection, and priority of the security, mortgage, and collateral interests and other Liens in and to the Collateral and the Super-Priority Claim shall not be altered or impaired by any plan of reorganization which may hereafter be confirmed or by any further order which may hereafter be entered.

## REMEDIES UPON AN EVENT OF DEFAULT

18.     Upon the occurrence of an Event of Default under the APA and at any time thereafter, with three (3) Business Days' prior written notice of such occurrence or any other provision of the APA and at any time thereafter upon five (5) Business Days' prior written notice of such occurrence, in each case given to the Debtor, counsel for any Senior Secured Creditors, counsel to the official creditors committee, if appointed, and the United States Trustee, and upon entry of an order of this Court, the Lender shall be entitled to exercise the following rights and remedies, subject to the rights of Senior Secured Creditors in the Collateral:

(1)     the Debtor shall place into a separate escrow all proceeds of Collateral pending further order of the Court;

(2)     the Debtor shall have no right to use any of such proceeds; and

(3)     all other remedies set forth at paragraph 18(g) of the APA.

19.     Nothing included herein shall prejudice, impair, or otherwise affect the Lender's right to seek any other or supplemental relief in respect of the Debtor nor the Lender's right, as provided in the APA, to suspend or terminate the making of loans under the APA.

## MISCELLANEOUS PROVISIONS

20.     If any provision of this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect the validity of any obligations incurred pursuant to this Order and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant to which such modification, vacation, or stay was established, nor the validity, priority, or enforceability of any Lien granted by the Debtor to the Lender.

21.     Any Advances made, Obligations incurred and the Liens and Super-Priority Claims granted to the Lender under the APA and this Order, and the priority thereof, shall be binding on the Debtor, any successor trustee for the Debtor, and all creditors of the Debtor, and the Lender shall otherwise be entitled to all of the benefits and protections of Bankruptcy Code Section 364(e).

22.     The Lender's failure to seek relief or otherwise exercise its rights and remedies under the APA or this Order shall not constitute a waiver of any of the Lender's rights hereunder, thereunder or otherwise.

23.     The Debtor and the Lender may amend or waive any provision of the APA, provided that such amendment or waiver, in the judgment of the Debtor and the Lender, is either

6

nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by the parties hereto and approved by the Court.

24.     In event of any inconsistency between the terms and conditions of the APA and this Order, the provisions of this Order shall govern and control.

25.     All objections to the entry of this Final Order have been withdrawn or are hereby overruled.

26.     The Lender shall have no obligation to lend any money to the Debtor unless and until the Procedures Order is entered by the Court, including approval of the Break-Up Fee set forth in paragraph 16 of the APA, and the Procedures Order shall become a Final Order.

SO ORDERED by the Court this ___ day of May, 2011.


_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 2

## Budget

## EXHIBIT B

### Budget

| Hot Idle Expenses: | Per Month | Months | Total | Grand Total |
|---|---|---|---|---|
| Security/Maintenance Contractor | 1600 | 3 | 4800 | |
| Comcast internet | 112 | 3 | 336 | |
| Verizon telephone | 170 | 3 | 510 | |
| Alarm monitoring fee | 118 | 3 | 354 | |
| Madison Twp. sewer | 50 | 3 | 150 | |
| City of Adrian water | 75 | 3 | 225 | |
| Consumers Energy electric | 2000 | 3 | 6000 | |
| Citizens Gas | 1000 | 3 | 3000 | |
| Lawn care and irrigation | 100 | 3 | 300 | |
| Supplies and Maintenance | 200 | 3 | 600 | |
| Property, Casualty & G/L Insur. | 4000 | 3 | 12000 | |
| Miscellaneous | 500 | 3 | 1500 | |
| *Total Hot Idle* | *9925* | *3* | *29775* | $29,775 |

| | | | | |
|---|---|---|---|---|
| *Miscellaneous Building Expenses* | | | | *$7,725* |
| *Mail initial filing to all parties* | | | | *$5,000* |
| *United States Trustee Fees* | | | | *$10,000* |
| *Creditors' Committee Counsel* | | | | *$7,500* |
| *Total Budget* | | | | *60,000* |

**Note 1**: Each individual line item disbursement may vary from the Budget by 20%, provided, however, in no event will the DIP Loan exceed $60,000, and no individual line item may be exceeded if it would cause other necessary expenses for hot idle and/or the building to go unpaid.

**Note 2**: To the extent that any of the foregoing budgeted items are advanced by a non-debtor person or entity (including Debtor's counsel) prior to approval of the post-petition financing, any order approving Debtor's post-petition financing entered in the case shall be deemed to include authority to reimburse any such non-debtor party for any such budgeted items so advanced.